IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 22, 2009 Session

## STATE OF TENNESSEE v. ALPHEUS LERONE LOWE

**Appeal from the Criminal Court for Davidson County**
**No. 2006-D-2766   Mark J. Fishburn, Judge**

---

**No. M2008-00766-CCA-R3-CD - Filed October 21, 2009**

---

At the conclusion of a jury trial, Appellant was convicted of DUI, third offense.  The trial court sentenced Appellant to eleven months and twenty-nine days with all but 120 days suspended.  The rest of the sentence was to be served on supervised probation.  On appeal, Appellant argues that the evidence was insufficient to support his conviction of DUI and that the trial court erred in neglecting to give the *Allen* or dynamite charge when the jury was unable to reach a verdict.  We conclude that the evidence was sufficient and that the use of the *Allen* or dynamite charge is no longer approved of by our supreme court.  Therefore, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

J. Robin McKinney, Jr., Nashville, Tennessee, for the appellant, Alpheus Lerone Lowe.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson, III, District Attorney General, and Kyle Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

On February 26, 2005, Corporal Daniel Okert of the Goodlettsville Police was on patrol on Long Hollow Pike.  At 3:15 a.m., Corporal Okert drove past a gas station and saw an individual walking toward a Cadillac.  As the individual approached his car, he fell over a garbage can onto the ground.  The garbage can was about waist-high.  Okert became concerned and turned around to check on the man.  The Cadillac had left the gas station by the time the officer had turned around.

Okert began to follow the Cadillac and realized that the driver of the Cadillac was exceeding the speed limit of 40 miles per hour.

The Cadillac drove about a quarter of a mile and pulled into the parking lot of another gas station. Corporal Okert saw a man exit the driver's side of the Cadillac wearing the same clothes as those worn by the man who fell over the garbage can at the previous gas station. Appellant was the driver of the Cadillac and its only occupant. Appellant was unsteady on his feet and smelled of alcohol. As Okert spoke with Appellant, he noticed that Appellant's speech was slurred and his eyes were bloodshot. Okert administered the walk-and-turn test and the one-legged stand test. Appellant was unable to successfully perform either test. The officer also asked Appellant to touch his thumb to each of his fingers individually and count as he did so. Appellant had difficulty bringing his thumb and fingers together.

Corporal Okert arrested Appellant for driving under the influence (DUI) and transported him to the Goodlettsville Police Department. Okert went over the implied consent law with Appellant who refused to take a breathalyzer test.

On October 23, 2006, the Davidson County Grand Jury indicted Appellant for DUI, third offense, driving with a revoked driver's license, and violation of the implied consent law. On August 13 and 14, 2007, the trial court held a jury trial. The trial court dismissed the charge of driving on a revoked license due to lack of evidence. The jury retired to deliberate. About one and a half hours after retiring, the jury sent the trial court a message that it was deadlocked. Appellant made a motion for a mistrial. The trial court denied the motion. The trial court reconvened the jury in the courtroom. The trial court questioned the foreman as to how many votes the jury had taken and what the chances were of any members of the jury changing their vote. The trial court stated that it did not want to know the breakdown of the votes one way or the other. The trial court then concluded that the discussion had not gotten to a point where any members of the jury were saying that they were not going to change their vote. The court was of the opinion that the members of the jury remained open-minded. The trial court sent the jury back to continue deliberating. The jury came back with a guilty verdict for the DUI charge. The parties stipulated that Appellant had two previous convictions for DUI and the trial court sentenced Appellant for DUI, third offense. Both parties waived a written presentence report. The trial court sentenced Appellant to eleven months and twenty-nine days and suspended all but 120. The balance of the sentence was ordered to be served on supervised probation. The trial court also imposed the mandatory minimum fine of $1,100.

Appellant filed a timely notice of appeal.

## ANALYSIS

### Sufficiency of the Evidence

Appellant argues that the evidence is insufficient to support his conviction for DUI. The State disagrees.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the state. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

Tennessee Code Annotated section 55-10-401(a)(a)(1) states, "It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any public roads . . . while: (1) Under the influence of any intoxicant . . . ." On appeal, Appellant argues that the evidence was insufficient to meet the requirements of this statute because there was no proof of bad driving, there was no physical evidence as to an intoxicant present in the vehicle, and the walk-and-turn test and the one-legged stand test are both less than 70% accurate. The statute does not require "bad driving" or the physical presence of an intoxicant. The statute only requires that the individual in control of an automobile be under the influence of an intoxicant. Clearly, the jury concluded that Appellant was indeed driving the Cadillac. His slurred speech, the odor of alcohol about his person, and his failure to satisfactorily perform the field sobriety tests showed that he was under the influence of an intoxicant.

Under the topic of sufficiency of the evidence, Appellant argues the jury should have rejected testimony regarding his performance of the field sobriety test based on Okert's testimony that the walk and turn test is only 68% accurate and the one-legged stand test is only 65% accurate.

However, with regard to field sobriety tests, our supreme court determined that an officer could testify as to the results of those tests in *State v. Murphy*, 953 S.W.2d 200 (Tenn. 1997). The court stated the following:

> For example, if a police officer testifies that the defendant was unable to walk a straight line or stand on one foot or count backwards, a jury needs no further explanation of why such testimony is relevant to or probative on the issue of the defendant's condition. A juror can rely upon his or her personal experience or otherwise obtained knowledge of the effects of alcohol upon one's motor and mental skills to evaluate and weigh the officer's testimony.

*Murphy*, 953 S.W.2d at 203. Clearly, evidence regarding a defendant's performance on such tests and the accuracy of such tests as a measure of driver's impairment are issues of fact and go the weight rather than the admissibility of this evidence. These issues are determined by the trier of fact. The jury obviously determined that the evidence presented by Corporal Okert regarding the two field sobriety tests, in part, proved that Appellant was under the influence of an intoxicant.

Therefore, this issue is without merit.

### Deadlocked Jury

Appellant also argues that the trial court erred because it "did not utilize the *Allen* or dynamite charge to urge the deadlocked jurors to re-evaluate their decision." The State argues that the *Allen* or dynamite charge has been expressly rejected by our supreme court.

Tennessee adopted its version of the *Allen* or "dynamite" charge in *Simmons v. State*, 281 S.W.2d 487 (1955).[1] The *Simmons* instruction exhorted the jurors to listen to the arguments of the other jurors "with a disposition to be convinced" and encouraged dissenters to ask themselves whether they might not "reasonably doubt" the correctness of their judgment as most members of the jury did not agree with them. *Simmons v. State*, 281 S.W.2d at 490. In *Kersey v. State*, 525 S.W.2d 139 (Tenn. 1975), our supreme court concluded that "the interests of justice demand the rejection of the "dynamite charge" as adopted in *Simmons*. *Kersey*, 525 S.W.2d at 144. The Supreme Court recognized that the right to trial by jury must not be impaired or encumbered, and that "[a]ny undue intrusion by the trial judge into this exclusive province of the jury, is an error of the first magnitude." *Id.*; *see also Vanderbilt Univ. v. Steely*, 566 S.W.2d 853, 854 (Tenn. 1978). If a trial judge's effort to avoid a mistrial reaches the point [that] a single juror may be coerced into surrendering views conscientiously held, the jury's province is invaded and the requirement of unanimity is diluted. *Kersey*, 525 S.W.2d at 144. The *Kersey* court stated the following:

---

[1] The charge originated first in *Commonwealth v. Tuey*, 62 Mass. 1 (1851) and came to national attention in *Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154 (1896).

-4-

Under the inherent and the statutory supervisory power of this Court, we advise the trial bench that when a jury's deliberations have not produced a verdict, and it returns to the courtroom and so reports, the presiding judge should admonish the jury, at the very outset, not to disclose their division or whether they have entertained a prevailing view. The only permissive inquiry is as to progress and the jury may be asked whether it believes it might reach a verdict after further deliberations. If the trial judge feels that further deliberations might be productive, he may give supplemental instructions in accordance with subsequent portions of this opinion. *See State v. Hutchins*, 43 N.J. 85, 202 A.2d 678 (1964).

*Id.* at 141.

In the case *sub judice*, the trial court brought the jury back into the courtroom and specifically admonished them not to disclose the nature of the voting up to that point. The trial court went on to determine that further deliberations could possibly yield a verdict. It appears from the record that the trial court followed the direction of our supreme court set out in *Kersey*. We find no error with regard to the denial of the motion for mistrial.

Therefore, this issue is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JERRY L. SMITH, JUDGE